# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ELIZABETH FULLER, )<br>)<br>    *Plaintiff*, )<br>)    Civil Action No.<br>v. )<br>)<br>KARL R. HADE, *Executive Secretary*, )<br>Office of the Executive Secretary for the )<br>Supreme Court of Virginia, *in his personal and* )<br>*official capacities*, )<br>)<br>and )<br>)<br>JONATHAN E. GREEN, *Director*, )<br>Department of Magistrate Services in the )<br>Office of the Executive Secretary for the )<br>Supreme Court of Virginia, *in his personal and* )<br>*official capacities*, )<br>)<br>and )<br>)<br>E. ELIZABETH EDWARDS, *Magistrate* )<br>*Regional Supervisor*, Magistrate Services in the )<br>Office of the Executive Secretary for the )<br>Supreme Court of Virginia, *in her personal and* )<br>*official capacities*, )<br>)<br>    *Defendants*. )<br>) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Elizabeth Fuller, by counsel and pursuant to 42 U.S.C. § 1983, brings this action against Defendants Karl R. Hade, Jonathan E. Green, and E. Elizabeth Edwards for violating Plaintiff's rights under the First and Fourteenth Amendments of the U.S. Constitution. As grounds therefor, Plaintiff alleges as follows:

## INTRODUCTION

1. On or about October 4, 2021, Plaintiff, a former magistrate for the City of Alexandria, made public comments to the *Alexandria Times* concerning official misconduct and the system's failure to protect a rape victim that ultimately led to her murder. In retaliation, her employment was terminated nearly two weeks after Plaintiff's public comments, effective October 19, 2021.

2. Plaintiff brings this action against all Defendants in their personal capacities for damages under Section 1983 of Title 42 of the U.S. Code and the First Amendment to the U.S. Constitution for employment retaliation.

3. Plaintiff also challenges the constitutionality of Canon 3, Section B(6) of the Canons of Conduct for Virginia Magistrates as overly broad and vague as applied to Plaintiff. On this ground, Plaintiff sues all Defendants in their official capacities in carrying out administrative functions to enjoin them from applying this overly broad and vague canon to terminate Plaintiff's employment for her comments to the *Alexandria Times*.

4. Plaintiff sues Defendants for their administrative actions taken against Plaintiff's employment, which are not judicial acts.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1331 because this action raises federal questions and seeks to redress the deprivation of rights under the First and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

7.   Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.  A declaration of law is necessary and appropriate to determine the parties' respective rights and duties.

## PARTIES

8.   Plaintiff Elizabeth Fuller is a citizen of the United States and a resident of the City of Alexandria in the Commonwealth of Virginia.  Plaintiff was a magistrate of the Eighteenth Judicial District in Alexandria, Virginia, from March 8, 2019, through October 19, 2021.

9.   Defendant Karl Hade is the Executive Secretary of the Office of the Executive Secretary for the Supreme Court of Virginia.  Defendant Hade is being sued in both his personal and official capacities.  In his personal capacity, he is being sued for damages for actions taken against Plaintiff under color of Virginia law in October 2021 through November 2021.  Defendant Hade is being sued in his official capacity for the enforcement of Canon 3, Section B(6) on the grounds that it is overly broad and vague as applied to Plaintiff.

10.   As Executive Secretary, Defendant Hade appoints magistrates in consultation with chief judges of the circuit courts having jurisdiction within the region and has "full supervisory authority over magistrates." Va. Code Ann. § 19.2-35, -43.  His duties include final employment determinations, and he may appoint and employ such personnel as are needed to help him manage the magistrate system and carry out the duties and responsibilities conferred upon him.  *Id.*  The Department of Magistrate Services, a branch within the Defendant's office, assists Defendant Hade in the management and administration of the magistrate system throughout the Commonwealth.

11. Defendant Jonathan E. Green is the Director of the Department of Magistrate Services within the Office of the Executive Secretary for the Supreme Court of Virginia. Defendant Green is being sued in both his personal and official capacities. In his personal capacity, he is being sued for damages for administrative actions taken against Plaintiff under color of Virginia law in October 2021 through November 2021. Defendant Green is being sued in his official capacity for the enforcement of Canon 3, Section B(6) on grounds that it is overly broad and vague as applied to Plaintiff.

12. As Director, Defendant Green provides administrative supervision and training to magistrates throughout the Commonwealth, including the Eighteenth Judicial District. On information and belief, his powers include review and final determination of magistrate employee grievances with approval of the Executive Secretary.

13. Defendant E. Elizabeth Edwards is the Magistrate Regional Supervisor for Region 5 of the Department of Magistrate Services within the Office of the Executive Secretary for the Supreme Court of Virginia. Defendant Edwards is being sued in both her personal and official capacities. In her personal capacity, she is being sued for damages for administrative actions taken against Plaintiff under color of Virginia law in October 2021 through November 2021. Defendant Edwards is being sued in her official capacity for the enforcement of Canon 3, Section B(6) on grounds that it is overly broad and vague as applied to Plaintiff.

14. Defendant Edwards serves as the regional supervisor for Region 5 that oversees the Eighteenth Judicial District for Alexandria. In this capacity, she assists with administering the statewide system, including overseeing personnel matters and employment termination of magistrates.

## STATEMENT OF FACTS

### I. Plaintiff's Employment

15. On March 8, 2019, Plaintiff was presented with an offer of employment to commence on March 25, 2019 as a magistrate in the Eighteenth Judicial District by Chief Magistrate Adam Willard (the chief magistrate for Alexandria).

16. Magistrates serve for a four-year term after an initial nine-month probationary period. Plaintiff completed her initial probationary period and served as a magistrate until her termination on October 19, 2021.

17. In this capacity, Plaintiff conducted impartial hearings related to searches, arrests, bails, temporary mental health detentions, and protective orders in the district for Alexandria. Va. Code Ann. §§ 19.2-45.

18. At all relevant times and throughout Plaintiff's tenure, Defendant Karl R. Hade served as Executive Secretary for the Office of the Executive Secretary for the Supreme Court of Virginia, Defendant Jonathan E. Green served as the Director of Magistrate Services for the Department of Magistrate Services within the Office of the Executive Secretary, and Defendant E. Elizabeth Edwards served as the Magistrate Regional Supervisor for Region 5 for the Department of Magistrate Services within the Office of the Executive Secretary.

19. At all relevant times, Defendants' conduct challenged in Plaintiff's complaint constitute administrative acts, not judicial acts.

### II. Circumstances Surrounding the Murder of Ms. Dominguez

20. In early October 2019, Plaintiff issued arrest warrants for Ibrahim Elkahlil Bouaichi for the alleged rape of Alexandria resident Karla Elizabeth Dominguez Gonzalez (hereinafter "Ms. Dominguez"). Bouaichi was subsequently arrested and indicted by a grand

jury on or about January 13, 2020 for burglary with the intent to commit murder, abduction, sodomy, strangulation, and rape of Ms. Dominguez.

21.     Plaintiff's involvement in the charges filed against Bouaichi was limited to the issuance of the arrest warrants in October 2019.

22.     Notwithstanding the seriousness of these charges, the Alexandria Circuit Court released Bouaichi on a $25,000 bond in April 2020.  Bouaichi's counsel argued, in large part, Bouaichi's potential for contracting Covid-19 while awaiting trial in jail.  The bond conditions stated that Bouaichi was to remain in the home of his parents in Greenbelt, Maryland, except to meet with counsel or for other pretrial matters associated with his arrest.

23.     Less than four months after his release on bail, Bouaichi, on July 29, 2020, reportedly drove to Ms. Dominguez' residence in Alexandria, Virginia and shot and killed her outside her apartment complex.

24.     The murder generated much media attention – especially after authorities made highly-publicized pleas to the public for assistance to locate Bouaichi.  Six days later, federal and local authorities identified Bouaichi in Prince George's County, Maryland in the vehicle used in the commission of Ms. Dominguez' murder.  The subsequent police vehicle pursuit resulted in Bouaichi crashing the vehicle and taking his own life by a self-inflicted gunshot wound.  He died three days later, on August 8, 2020.

25.     In the immediate days following the news reports about Ms. Dominguez' murder, Plaintiff learned from a police officer in the citizens lobby of the magistrate's office that the vehicle and gun reportedly used by Bouaichi to murder Ms. Dominquez belonged to the surety bail bondsman, Man Nguyen, who posted the $25,000 bond for Bouaichi's release in April 2020. On information and belief, bondsman Nguyen told an officer during a casual conversation in the

citizens lobby that it was his gun and car that Bouaichi used to murder Ms. Dominguez, and that he had let Bouaichi stay at his house while he was away on vacation. The officer subsequently relayed the information to Plaintiff as part of a casual conversation among friendly colleagues, outside any hearing or proceeding.

26. The bail bondsman was not before Plaintiff in a proceeding when he made the statements about his car and gun having been used in the commission of Ms. Dominguez' murder. Nor were the statements made for the purpose of conducting any official business.

27. Neither did the officer relay the information about bondsman Nguyen's involvement in Ms. Dominguez' murder as part of any hearing or proceeding before Plaintiff, or for the purpose of conducting any official business. The information acquired by Plaintiff about Nguyen's involvement did not arise out of any pending, impending, and/or concluded proceeding in any court or magistrate office. Nor was the information nonpublic or acquired in Plaintiff's official capacity as a magistrate.

28. Plaintiff later informed her chief, Chief Magistrate Adam Willard, about bondsman Nguyen's involvement, but he responded that Plaintiff should not do anything as a result.

29. Nevertheless, on August 6, 2020, Plaintiff, in her personal capacity, filed a complaint with the Commonwealth of Virginia Department of Criminal Justice Services ("DCJS") alleging that bondsman Nguyen had violated rules and regulations of his licensure as a surety bail bondsman. In the DCJS complaint, Plaintiff alleged

> The bondsman allowed Mr. Bouaichi to stay at his home while he was not there. One of the conditions of the bond release for burglary, rape, abduction, sodomy, and strangulation was that Mr. Bouaichi was supposed to reside at his parents' house in MD and not leave except to meet with his counsel or pre-trial services.
>
> Mr. Bouaichi took the bondsman's unlocked guns and stole his car and used them to murder

the victim on 7/27.

*See* Ex. 1.  Plaintiff filed the complaint as a private citizen using her home address, home phone number, and her personal email as her contact information.

30. On September 1, 2020, DCJS held an Informal Fact Finding Conference. Bondsman Nguyen's surety bail bond license was revoked as a result and Plaintiff understood that this concluded the matter against bondsman Nguyen.

31. On information and belief, a motion to issue a capias warrant was subsequently filed in the Alexandria Circuit Court against bondsman Nguyen in or about October 2020 by the Commonwealth's Attorney for Alexandria.  Plaintiff had no knowledge about the issuance of the capias warrant – it was never a motion or matter that came before the magistrate's office.

32. Bouaichi's bail release and the devastating subsequent killing of his rape victim fueled public debate about lenient law enforcement and bail practices in the Commonwealth of Virginia and nationwide.

33. In February 2021, then delegate for the 82nd District in the Virginia General Assembly, now Virginia Attorney General Jason Miyares, emphasized the tragic murder of Ms. Dominguez during a floor debate about whether to remove the legal presumption that defendants charged with violent crimes, such as murder or rape, do not qualify for bail release.  Arguing against removing the presumption, Attorney General Miyares said:

> Several members on the other side are tired of me holding up photos of victims…Well, I'm tired of holding up the photos of victims.  The victims' families are tired of the fact that all that they have left for their loved ones are these photos – instead of an empty chair every time they have dinner.

*Id.*  Ms. Dominguez' photo was one of the photographs held up by Attorney General Miyares on the House floor.  *See* https://www.dailypress.com/government/virginia/dp-nw-bail-reform-20210226-5ez6eseyl5aqnokb5lpz4qqbri-story.html (last accessed March 1, 2022).

### III. Plaintiff's Comments to the *Alexandria Times*

34.     On September 9, 2021, the *Alexandria Times* – a local publication focusing on news and events in the City of Alexandria – reported on newly obtained information under the Freedom of Information Act ("FOIA") about bondsman Nguyen's involvement.[1] A copy of Plaintiff's 2020 complaint with DCJS was among the records obtained and reported on in the September 9, 2021 article. *See* Olivia Anderson, "*Bondsman's Gun Used in Murder of Dominguez*," THE ALEXANDRIA TIMES, Sept. 9, 2021 (https://alextimes.com/2021/09/Bondsmans-gun-used-in-murder-of-dominguez/) (last accessed March 1, 2022).

35.     Following the September article, the *Alexandria Times* reporter contacted Plaintiff for comments for an upcoming article on her decision to file the complaint with DCJS and DCJS's resolution to revoke bondsman Nguyen's license. Plaintiff provided the interview on or about October 4, 2021 and the article was published on October 7, 2021. The article identifies Plaintiff as making the following statements about her decision to file the complaint:

- [Bondsman] Nguyen came to work in the days following the murder nearly boasting and joking about the fact that the gun and car belonged to him and that Bouaichi had stayed at his home.

- "[Bondsman Nguyen] was telling this officer about what happened and almost bragging about it. The officer said to me, 'You will never believe what he just said to me.'" "So I said, 'I've got to do something about it.'"

*See* Ex. 2 (Olivia Anderson, "*Bondsman in Karla Dominguez Case Charged*," THE ALEXANDRIA TIMES, October 7, 2021).

36.     Plaintiff's comments to the *Alexandria Times* pertained to the publicly available outcome of Plaintiff's 2020 DCJS complaint against bondsman Nguyen and what precipitated

---

[1] The records obtained through FOIA revealed to the public for the first time that the car and weapon used to murder Ms. Dominguez belonged to bondsman Nguyen, that the bondsman and Bouaichi knew each other for 10 years, and that the murder happened while Bouaichi was dog-sitting for the bondsman, giving Bouaichi access to the bondsman's house and car, and two unlocked handguns left in a bag in a closet in the home.

- 9 -

her to file the complaint – which undoubtedly is a matter of substantial public interest and concern. Plaintiff's complaint, as are all complaints received by DCJS, was subject to public disclosure once the case was closed with the bondsman's license having been revoked a year earlier. [2] *See* Ex. 1.

37. Plaintiff's statements did not disclose any nonpublic information obtained in her official capacity as a magistrate. They were based on publicly available information and/or disclosed in response to the FOIA request.

38. All of Plaintiff's comments to the *Alexandria Times* pertained to matters of substantial public interest and concern and were not comments about any pending, impending or concluded proceedings, other than Plaintiff's own complaint filed with DCJS.

39. At the time of Plaintiff's interview, Plaintiff did not have any knowledge of the October 2020 motion to issue a capias warrant filed against bondsman Nguyen and it was not part of the interview. Plaintiff only learned about the motion after the *Alexandria Times* published the article on October 7, 2021. The motion was not reported on in the *Alexandria Times* article published on September 9, 2021 or, on information and belief, by any other news agency or publication prior to the *Alexandria Times*' October 7, 2021 publication.

### IV. Plaintiff's Employment Termination

<u>Defendants' Violation of Plaintiff's Right to Free Speech</u>

40. Five days after the October 7, 2021 publication of the article, Plaintiff was placed on administrative leave for the comments she made to the *Alexandria Times*. On October 12, 2021, Plaintiff received a call and email from her chief magistrate informing her that she was

---

[2] According to the Frequently Asked Questions on the DCJS' website, complaints become public after the investigation and adjudication is completed, as are disciplinary actions. *See* https://www.dcjs.virginia.gov/licensure-and-regulatory-affairs/faqs/complaints%20and%20Adjudication.

being investigated for "potentially violat[ing] the Canons of Conduct [for Virginia Magistrates]," and to not report to work until further notice.

41.     That same day, Chief Magistrate Willard sent a general email to all Alexandria magistrates with the subject heading "Policy and Canon reminders."  The email made general notations to the (i) 40-hour work week requirement, (ii) Canon 3, Section B(6) of the Canons of Conduct for Virginia Magistrates and (iii) a reminder that "it is improper for a magistrate to make public comment giving his/her opinion on the finding of another magistrate or judicial officer in any case, especially so in cases whereby the magistrate was not personally present."

42.     Plaintiff was not notified in either the telephone call or the email she received on October 12, 2021 about her administrative leave of any specific canon she potentially violated.

43.     That following Saturday, Plaintiff received a text message from Chief Magistrate Willard stating that he and Plaintiff "will be meeting with [Defendant] Edwards on Tuesday, [October 19, 2021] at 10 a.m." and that "[Plaintiff's] presence is required."  When Plaintiff asked what she should expect, he responded, "I know exactly as much as you do.  I have no idea what to expect."

44.     On Tuesday, October 19, 2021, Plaintiff appeared at her office, as requested, and was met by Chief Magistrate Willard and Defendant Edwards.  During the brief meeting, Plaintiff was informed for the first time that her employment was terminated for violating Canon 3, Section B(6), and was handed a letter documenting her termination effective October 19, 2021.  On information and belief, the decision to terminate Plaintiff had been made prior to the meeting and the letter was plainly prepared in advance of the meeting with Plaintiff.

45.     Canon 3, Section B(6) provides, in relevant part, that

> a magistrate shall abstain from public comment about a pending, impending or concluded proceeding in any court or magistrate's office.  Furthermore, a magistrate shall not disclose

> or use, for any purpose unrelated to official duties, nonpublic information acquired in a magistrate capacity…This provision does not prohibit a magistrate from commenting on proceedings in which the magistrate is a litigant in a personal capacity.

Canons of Conduct for Virginia Magistrates.

46. The October 19, 2021 termination letter states that Plaintiff was fired due to "[s]tatements made to the press regarding two active criminal cases, as evidenced in the Alexandria Times article, dated October 7, 2021." Ex. 3 (October 19, 2021 Termination Ltr.). The letter further cites Canon 3, Section B, number 6. According to the letter, Plaintiff's statements "resulted in a public and wide-spread decimation (sic) of your inappropriate conclusory comment about two matters currently before the court." *Id*.

47. The termination letter did not identify the "two matters currently before the court," and neither did the *Alexandria Times* article.

48. The only cases Plaintiff was aware of when she made the comments to the *Alexandria Times* reporter were the 2020 criminal case filed against Bouaichi for the rape of Ms. Dominguez and Plaintiff's own 2020 complaint filed with DCJS against bondsman Nguyen, both of which were closed at the time of Plaintiff's comments. The case against Bouaichi closed when he died in August 2020 and Plaintiff's DCJS complaint against the bondsman closed in September 2020 when his license was revoked.

49. The termination letter also did not identify the alleged "nonpublic information acquired" in Plaintiff's "official magistrate capacity" and disclosed to the *Alexandria Times*.

50. On or about November 10, 2021, Plaintiff filed a grievance seeking administrative review of her termination. She invoked her clearly established statutory and constitutional rights to free speech and due process under the United States Constitution.

51. On November 22, 2021, Defendant Green, with Defendant's Hade's review and

approval, denied Plaintiff's grievance via a letter, thereby affirming Defendant Edwards' decision to terminate her employment. Plaintiff was informed that the November 22, 2021 decision constituted the final step of the grievance process. *See* Ex. 4 (November 22, 2021 Grievance Denial Ltr.). This was the only communication Plaintiff received during her grievance process after the October 19, 2021 meeting and letter documenting her termination.

52. In the November 22, 2021 letter, Defendants for the first time identify Plaintiff's comments that allegedly revealed "nonpublic information learned in [her] official capacity." The comments were two statements concerning bondsman Nguyen's conversation with the officer published in the October 7, 2021 *Alexandria Times* article:

> According to [Plaintiff], whose office issues arrest warrants and holds bail hearings, Nguyen came to work in the days following the murder nearly boasting and joking about the fact that the gun and car belonged to him and that Bouaichi had stayed at his home.
>
> "He was telling this officer about what happened and almost bragging about it. The officer said to me, 'You will never believe what he just said to me,'" [Plaintiff] said.

Defendants continued that the "article contains numerous other quotes from [Plaintiff] about other aspects of the Dominguez matter," but once more, fail to identify with any specificity the statements that allegedly violated the canons, other than the two quotes above.

53. Defendants for the first time also identify the pending criminal contempt charge filed by the Commonwealth's Attorney against bondsman Nguyen as one of the two pending cases Plaintiff allegedly commented on to violate the canon. Although the *Alexandria Times* October 7, 2021 article references the matter, Plaintiff had no knowledge about the issuance of the capias warrant when she made the comments to the reporter and it was not part of the interview. Plaintiff obviously could not have commented on a pending case without knowledge about the case. To Plaintiff's knowledge at the time of the interview, the only case filed against bondsman Nguyen in connection with Bouaichi's bail or Ms. Dominguez' murder was her own

complaint filed with DCJS, which was closed and made public through the FOIA request.

54. Plaintiff never had the opportunity to defend herself against the specific accusations because Defendants did not provide Plaintiff with notice of the allegations prior to the final step in her grievance process.

55. Plaintiff was never provided notice and never had the expectation that anything discussed or perceived within the halls of the magistrate office, including the citizens lobby open to the public, is to be considered information obtained in a "magistrate capacity" and "nonpublic information."

56. Defendants have never identified to the date of this filing the second of the "two active criminal cases" Plaintiff allegedly commented on, as purported in the October 19, 2021 termination letter. *See* Ex. 3.

57. Throughout Plaintiff's termination and grievance process, Defendants ignored the fact that Plaintiff's public comments concerned a personal complaint she filed with DCJS – comments that are specifically exempted by the canon. "This provision does not prohibit a magistrate from commenting on proceedings in which the magistrate is a litigant in a personal capacity." Canon 3, Section B(6). In fact, Defendants failed to acknowledge the canon's express exception in both the October 19, 2021 and November 22, 2021 letters and disregarded the exemption to terminate Plaintiff's employment.

58. Plaintiff has suffered substantial damages, including loss of income and employment benefits, loss of reputation, and emotional distress, among other injuries, as a result of these adverse administrative employment actions taken against her.

59. Plaintiff's unemployment benefits have been denied pursuant to Section 60.2-618(2) of the Virginia Unemployment Compensation Act.

First and Fourteenth Amendment Violations by Defendants
Hade, Green and Edwards in Their Official Capacities Only

60. As the Executive Secretary, Director for the Department of Magistrate Services, and Magistrate Regional Supervisor respectively, Defendants Hade, Green, and Edwards bear overall responsibility for the promulgation and enforcement of the Canons of Conduct for Virginia Magistrates in Region 5.  Canons of Conduct for Virginia Magistrates, Canon 8; Va. Code Ann. §§ 19.2-35, -37, and -43.

## COUNT ONE

### 42 U.S.C. § 1983 – First Amendment Retaliation
### (Against All Defendants in Their Personal Capacities)

61. Plaintiff realleges paragraphs 1-60 as if fully stated herein.

62. Plaintiff enjoys the right to Freedom of Speech as protected by the First Amendment to the United States Constitution.  This includes the right to comment to the *Alexandria Times* on Plaintiff's public complaint filed in her personal capacity about the misconduct of a bondsman and its outcome, and the system's failure to protect a rape victim.

63. Plaintiff did not relinquish her right to free speech when she was hired as a magistrate.

64. At all relevant times, Plaintiff was engaged in constitutionally protected speech when she made the comments to the *Alexandria Times*, which undeniably addressed matters of public concern.

65. Plaintiff's statements were made in her personal capacity as a private citizen, not in her capacity as a magistrate.

66. At all relevant times, Plaintiff did not disclose any "nonpublic information acquired in a magistrate capacity."

67. At all relevant times, Plaintiff did not comment on any pending matter or any case before her.

68. At all relevant times, Plaintiff's interest in First Amendment protected speech as a citizen outweighs any governmental interest in the efficient operation of the magistrate system.

69. At all relevant times, Defendants knew or should have known Plaintiff was engaged in protected speech. Plaintiff's constitutional and statutory rights under the First Amendment were clearly established of which a reasonable person would have known. Any reasonable official would have understood that terminating Plaintiff's employment for her comments to the *Alexandria Times* would violate Plaintiff's First Amendment rights.

70. At all relevant times, Defendants retaliated against Plaintiff for disclosing misconduct she was told to ignore and speaking out about the misconduct.

71. At all relevant times, Defendants' actions were not judicial acts, but rather, administrative actions over an employment matter and grievance.

72. Defendant Edwards, acting under color of Virginia law, deprived Plaintiff of her rights under the First Amendment to the United States Constitution when she terminated Plaintiff's employment for having exercised her rights to Freedom of Speech.

73. Defendants Green and Hade had final review authority over Plaintiff's employment termination and grievance process. Defendants Green and Hade, acting under color of Virginia law, deprived Plaintiff of her rights under the First Amendment to the United States Constitution when they denied Plaintiff's grievance and affirmed Plaintiff's employment termination for having exercised her constitutionally protected rights to Freedom of Speech.

74. Plaintiff's protected speech was a substantial part or motivating factor in Defendants' decision to terminate Plaintiff's employment and deny her request for reinstatement

during the grievance process, and, but for Plaintiff's protected speech, Defendants would not have terminated Plaintiff's employment and denied her grievance request.

75. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff suffered damages, including a loss of income and employment benefits, loss of reputation, and personal humiliation and emotional distress, among other injuries.

## COUNT TWO
### 42 U.S. C. § 1983 – First and Fourteenth Amendment Violations
### Declaratory and Injunctive Relief
### (Against Defendants in their Official Capacity Only)

76. Plaintiff realleges paragraphs 1-75 as if fully stated herein.

77. Plaintiff enjoys the right to freedom of speech, as guaranteed by the First Amendment to the United States Constitution. This includes the right to comment to the *Alexandria Times* on Plaintiff's public complaint filed in her personal capacity about the misconduct of a bondsman and its outcome, and the system's failure to protect a rape victim.

78. Plaintiff also enjoys the right to due process, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

79. The statute at issue, Canon 3, section B(6) of the Canons of Conduct for Virginia Magistrates is unconstitutional as applied to Plaintiff. The canon is overly broad, vague, and not narrowly tailored to further a compelling government interest, nor even reasonable in light of its purpose.

80. The actions of Defendants Hade, Green, and Edwards have chilled and deprived Plaintiff of her right to engage in constitutionally protected speech and threaten to deprive Plaintiff of her right to engage in such activity in the future.

81. The actions of Defendants have caused and will continue to cause Plaintiff to

suffer irreparable harm.

82. Canon 3, section B(6) as applied to Plaintiff violates the First Amendment and Due Process Clause of the Fourteenth Amendment.

83. No remedy available at law will adequately redress the violation of Plaintiff's First and Fourteenth Amendments by Defendants Hade, Green and Edwards in their official capacities.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor as follows:

(1) against all Defendants in their personal capacity, jointly and severally, enter an award for compensatory damages in the amount to be determined at trial,

(2) against all Defendants in their personal capacity, jointly and severally, enter an award of punitive damages in the amount to be determined at trial;

(3) against all Defendants in their personal and official capacity, jointly and severally, enter an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

(4) declare Canon 3, Section B(6) of the Canons of Conduct for Virginia Magistrates unconstitutionally broad and vague as applied to Plaintiff;

(5) enjoin Defendants from applying Canon 3, Section B(6) to terminate Plaintiff's employment due to her comments to the *Alexandria Times*; and

(6) any and all other such relief that the Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff Elizabeth Fuller demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  March 1st, 2022                          Respectfully submitted,

/s/ James F. Peterson
James F. Peterson (VA Bar No. 36211)
Ramona R. Cotca*
Eric W. Lee*
JUDICIAL WATCH, INC.
425 Third Street S.W., Suite 800
Washington, DC 20024
(202) 646-5175
jpeterson@judicialwatch.org
rcotca@judicialwatch.org
elee@judicialwatch.org

*Applications for admission pro hac vice are forthcoming

*Counsel for Plaintiff*