**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| ELIZABETH FULLER, | ) | |
| | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| KARL R. HADE, *et al.*, | ) | 1:22-cv-218 (PTG/IDD) |
| | ) | Hon. Patricia Tolliver Giles |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

This matter is before the Court on a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submitted by Defendants Karl R. Hade, Executive Secretary of the Office of the Executive Secretary ("OES") for the Supreme Court of Virginia, Jonathan E. Green, Director of the Department of Magistrate Services in OES for the Supreme Court of Virginia, and E. Elizabeth Edwards, Magistrate Regional Supervisor for Region Five of the Department of Magistrate Services in OES for the Supreme Court of Virginia (collectively "Defendants") (Dkt. 4). Plaintiff Elizabeth Fuller was employed as a magistrate by OES for the Supreme Court of Virginia and sued Defendants in their personal capacities for retaliation in violation of the First Amendment of the United States Constitution and in their official capacities for violations of the First and Fourteenth Amendments of the United States Constitution. Plaintiff alleges that Defendants retaliated against her and violated her right to free speech when they fired her for violating Canon 3(B)(6) of the Canons of Conduct for Virginia Magistrates (hereinafter "Canon 3(B)(6)") by providing comments to the local newspaper, the *Alexandria Times*, about a

1

pending, impending, or concluded case in the judicial system by which she was employed. Plaintiff also alleges that Defendants violated her due process rights because Plaintiff's termination did not provide an adequate opportunity to contest the allegations against her. Defendants, however, argue that Plaintiff's speech is not protected because she was not speaking as a private citizen on a matter of public concern when she provided comments to the *Alexandria Times* and the government's interest in the impartial administration of justice outweighs Plaintiff's right to speak publicly on the matter. Even if Plaintiff states a plausible claim for relief, Defendants argue that they are entitled to qualified immunity in their individual capacities. Defendants also argue that Plaintiff's due process claim fails because Plaintiff is an at-will employee of OES and does not have a property interest in her continued employment as a magistrate.

The issues before the Court are: (1) whether Plaintiff plausibly states a claim for relief on her First Amendment retaliation claim against Defendants, and if so, whether Defendants are entitled to qualified immunity in their individual capacities; (2) whether Plaintiff plausibly states a claim for relief that Canon 3(B)(6) as applied to Plaintiff violated her First Amendment rights; and (3) whether Plaintiff plausibly states a claim for relief that Canon 3(B)(6) as applied to Plaintiff violated her Fourteenth Amendment rights. To resolve the issues related to Plaintiff's First Amendment claims, the Court must determine whether Plaintiff was speaking as a private citizen on a matter of public concern when she made her comments to the *Alexandria Times* and, if so, whether the government's interests in limiting her speech outweigh Plaintiff's right to speak publicly on the matter. To resolve the issue related to Plaintiff's Fourteenth Amendment claim, the Court must determine whether Plaintiff has a property interest in her continued employment as a magistrate.

Upon consideration of the motions and the arguments of counsel, for these reasons and

those more fully stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. 4). The Court finds that Plaintiff has sufficiently alleged a First Amendment violation to survive a motion to dismiss. However, Defendants are entitled to qualified immunity in their personal capacities. Accordingly, the Motion is GRANTED with respect to Count I and the Fourteenth Amendment claim under Count II, and is DENIED with respect to the First Amendment claim under Count II.

## I.   **BACKGROUND**

### A.   **Factual Background**

*Plaintiff's Employment*

The pertinent factual allegations in this case are as follows.[1] In March 2019, Plaintiff was hired as a magistrate for the Eighteenth Judicial District by Chief Magistrate Adam Willard. Dkt. 1 ("Compl.") ¶15. Plaintiff was an at-will employee and served at the pleasure of the Executive Secretary of the Supreme Court of Virginia. Va. Code Ann. § 19.2-38.[2] As a magistrate, Plaintiff was responsible for conducting impartial hearings related to searches, arrests, bails, temporary

---

[1] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, the following facts, taken from Plaintiff's Complaint, are accepted as true for purposes of this Motion.

[2] Plaintiff's March 8, 2019 appointment letter specifically states: "All employees of [the OES] serve at the pleasure of the Executive Secretary of the Supreme Court of Virginia. Therefore, you will be an at-will employee. This offer letter shall not be construed as creating a contract of employment, express or implied." Dkt. 5-1. Although this letter is before the Court as an attachment to Defendants' Motion to Dismiss, the Court considers this document in its evaluation of the Motion because the terms of Plaintiff's employment are integral to her Fourteenth Amendment claim, and there is no dispute about the document's authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016); *see also Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (stating that "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint" and may attach "not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiff's claims").

mental health detentions, and protective orders in the district for Alexandria.  Compl. ¶17.  Her

offer letter indicates that Plaintiff is bound by the Canons of Conduct for Virginia Magistrates

("Canons of Conduct"), which provide:

> A magistrate shall abstain from public comment about a pending, impending or
> concluded proceeding in any court or magistrate's office. Furthermore, a magistrate
> shall not disclose or use, for any purpose unrelated to official duties, nonpublic
> information acquired in a magistrate capacity. This provision does not prohibit a
> magistrate from speaking about the legal system or the administration of justice in
> an educational context or from explaining for public information the procedures of
> the court or magistrate's office consistent with Canon 4. This provision does not
> prohibit a magistrate from commenting on proceedings in which the magistrate is
> a litigant in a personal capacity.

*Id.* ¶45; Dkt. 5-1 ("Canon 3(B)(6)").  Plaintiff accepted the offer and its terms on March 11, 2019.

Dkt. 5-1.

*Plaintiff's Administrative Complaint*

On August 6, 2020, Plaintiff, while employed as a magistrate, filed a complaint in her

personal capacity with the Commonwealth of Virginia Department of Criminal Justice Services

("DCJS") alleging that a surety bail bondsman, Man Nguyen, had violated rules and regulations

of his licensure in connection with the bail release of Ibrahim Elkahlil Bouaichi, who was arrested

and indicted on or around January 13, 2020 for burglary with the intent to commit murder,

abduction, sodomy, strangulation, and rape of Karla Elizabeth Dominguez Gonzalez (hereinafter

"Ms. Dominguez").  Compl. ¶20.

The background of Bouaichi's case is as follows.  In October 2019, Plaintiff had issued

arrest warrants for Bouaichi for the alleged rape of Ms. Dominguez, and on January 15, 2020,

Plaintiff held a bail hearing and issued a commitment order to hold Bouaichi without bail on a

charge of rape.  *Id.* ¶21; Dkt. 5-5.[3]  In April 2020, following Bouaichi's arrest and indictment, an

---

[3] Although the commitment order is before the Court as an attachment to Defendants' Motion to

Alexandria Circuit Court Judge released Bouaichi on a $25,000.00 bond. Compl. ¶22. The bond conditions stated that Bouaichi would stay at his parents' home in Greenbelt, Maryland, except to meet with counsel or for other pre-trial matters associated with his arrest. *Id.* On July 29, 2020, Bouaichi allegedly drove to Ms. Dominguez's residence in Alexandria, Virginia and shot and killed her outside her apartment complex. *Id.* ¶23. Several days after the murder, Bouaichi died from a self-inflicted gunshot wound. *Id.* ¶24.

Several days after the murder of Ms. Dominguez, Plaintiff learned from a police officer in the citizens' lobby of the magistrate's office that the murder weapon and vehicle used in the commission of Ms. Dominquez's murder belonged to Nguyen, who had posted bail for Bouaichi's release. *Id.* ¶25. The officer told Plaintiff that this information was obtained from a casual conversation between Nguyen and an officer in the citizens' lobby, and that Nguyen told the officer that he had let Bouaichi stay at his house while he was on vacation. *Id.*

Plaintiff's complaint to DCJS against Nguyen alleged:

> The bondsman allowed Mr. Bouaichi to stay at his home while he was not there. One of the conditions of the bond release for burglary, rape, abduction, sodomy, and strangulation was that Mr. Bouaichi was supposed to reside at his parents' house in MD and not leave except to meet with his counsel or pre-trial services. Mr. Bouaichi took the bondsman's unlocked guns and stole his car and used them to murder the victim on 7/27.

*Id.* ¶29. On September 1, 2020, DCJS held an Informal Fact Finding Conference and decided to revoke Nguyen's bail bond license. *Id.* ¶30. Shortly thereafter, the Commonwealth's Attorney for Alexandria charged Nguyen with criminal contempt, and in October 2020, filed a motion to issue a capias warrant against Nguyen in Alexandria Circuit Court. *Id.* ¶¶31, 53. Plaintiff was not

---

Dismiss, the Court considers this document in its evaluation of the Motion because the nature of Plaintiff's involvement with Bouaichi's case is integral to her First Amendment claim, and there is no dispute about the document's authenticity. *See Goines*, 822 F.3d at 164.

aware of the pending charge at the time that she provided comments to the *Alexandria Times*. *Id.* ¶53.

These events fueled public debate about bail practices in the Commonwealth of Virginia and nationwide. *Id.* ¶¶32–33. In February 2021, then-Virginia Delegate, now Virginia Attorney General, Jason Miyares held up a photograph of Ms. Dominguez in the Virginia General Assembly during a floor debate on whether to remove the legal presumption that defendants charged with violent crimes do not qualify for bail release. *Id.* ¶33.

*Plaintiff's Comments to the* Alexandria Times

On September 9, 2021, the *Alexandria Times*, a local newspaper focusing on news and events in Alexandria, Virginia, published an article on the murder of Ms. Dominguez and reported that Bouaichi used Nguyen's car and weapon in the commission of her murder. *Id.* ¶34. The article included new information from documents obtained under the Freedom of Information Act ("FOIA"). *Id.* It reported that Bouaichi and Nguyen had known each other for ten years and that Bouaichi had access to Nguyen's car and handguns to use in the commission of the murder while Bouaichi was dog-sitting for Nguyen. *Id.* ¶34 n.1. It also reported that Plaintiff, identified in the article as an Alexandria magistrate, filed a complaint with DCJS stating that Nguyen had violated several statutes and regulations of his licensure. *Id.* ¶34.

After the September article was published, the *Alexandria Times* contacted Plaintiff in reference to a forthcoming article about her DCJS complaint and DCJS's decision to revoke Nguyen's license. *Id.* ¶35. Plaintiff interviewed with the *Alexandria Times* reporter on October 4, 2021, and the article was published on October 7, 2021. *Id.* The following portions of the article quote or describe Plaintiff's statements to the newspaper:

> According to Fuller, whose office issues arrest warrants and holds bail hearings, Nguyen came to work in the days following the murder nearly boasting and joking

about the fact that the gun and car belonged to him and that Bouaichi had stayed at his home.

"He was telling this officer about what happened and almost bragging about it. The officer said to me, 'You will never believe what he just said to me,'" Fuller said. "So I said, 'I've got to do something about it.'"

. . . .

Fuller said that Dominguez'[s] murder was likely the product of a COVID-19-induced "perfect storm."

"I would like to say that under normal circumstances he would not have been released. The law does state that there are some crimes for which no bond can secure the safety of the public or the victim," Fuller said. "I believe that in [this situation], that was the case."

According to Fuller, her decision to file a complaint was categorical.

"Someone had to do something," Fuller said. "We were just horrified seeing this guy work and still continuing to make money after we knew he was the one who had bonded him out. See, that's the thing: We knew [Nguyen] was the one who bonded him out, which in and of itself was bad enough because he didn't adhere to the bond conditions."

. . . .

Fuller, while deeply in support of Nguyen's licensure removal, partially echoed this sentiment [referring to Nguyen's statement that Bouaichi's Maryland pretrial services officer dropped the ball].

"I do not know why [Maryland officials] didn't know he was out on bond; it's like living a bad lifetime movie," Fuller said. [sic] "Nobody responsible, really, is being held responsible. [Bouaichi] is dead; the judge is retired. How did everybody in this whole process drop the ball?"

. . . .

In Fuller's eyes, a victory for the prosecution in Nguyen's case would be a small consolation for the fact that Dominguez is gone.

"It doesn't bring her back," Fuller said. "There are horrible injustices that happen all the time, every day. . . . I can deal with the day-to-day crime because that's the state of the fallen world. But why I can't reconcile this is because she didn't need to be dead. She had already experienced unimaginable trauma and abuse, and she didn't need to be dead on top of it."

7

"There's no justice in this. It was something that was entirely preventable if anybody in the process had been doing their job effectively," Fuller added. "It's just such a string of tragic consequences. Every step along the way, the system completely failed this woman."

Dkt. 1-3.

*Plaintiff's Termination*

On October 12, 2021, Plaintiff received an email from Chief Magistrate Willard stating: "Your comments to the Alexandria Times have potentially violated the Canons of Conduct. You are being placed on administrative leave with pay while the matter is being investigated. Do not report for work until further notice." Compl. ¶40; Dkt. 5-4. That same day, Willard sent an email to all Alexandria magistrates with the subject line: "Policy and Canon reminders." Compl. ¶41. Willard's email included reminders on (1) the 40-hour work week requirement; (2) Canon 3(B)(6) of the Canons of Conduct for Virginia Magistrates; and (3) that "it is improper for a magistrate to make public comment giving his/her opinion on the finding of another magistrate or judicial officer in any case, especially so in cases whereby the magistrate was not personally present." *Id.*

The following weekend, Willard asked Plaintiff to meet with him and Magistrate Regional Supervisor E. Elizabeth Edwards on October 19, 2021. *Id.* ¶43. During that meeting, Plaintiff was informed that her employment was terminated for violating Canon 3(B)(6) and received a letter of termination. *Id.* ¶44. Plaintiff's termination letter cites Canon 3(B)(6) and states that Plaintiff's employment was terminated because of her "[s]tatements made to the press regarding two active criminal cases; as evidenced in the Alexandria Times article, dated October 7, 2021, and confirmed by you to your chief magistrate on October 12, 2021." *Id.* ¶46; Dkt. 1-4. Edwards wrote: "You have demonstrated a flagrant disregard of your responsibility under the Canons of Conduct for Virginia Magistrates, which has resulted in public and wide-spread decimation [sic] of your

8

inappropriate conclusory commentary about two matters currently before the court. I do not have any confidence in your judgment as a magistrate and that we can move forward in a positive manner." Dkt. 1-4. Edwards also included information on the Virginia Judicial System Grievance Procedure and informed Plaintiff of her right to submit a grievance form within thirty calendar days. *Id.*

On November 10, 2021, Plaintiff filed a grievance seeking administrative review of her termination. Compl. ¶50. On November 22, 2021, Director of the Department of Magistrate Services Jonathan Green denied Plaintiff's grievance via letter, finding that Plaintiff was not denied adequate due process and there was no evidence to indicate that Plaintiff's "termination was done for any improper or retaliatory purpose." *Id.* ¶51; Dkt. 1-5. Green wrote: "You are subsequently quoted numerous times in the [*Alexandria Times*] article, after being identified as an Alexandria magistrate. In some of your comments, you describe the statements and actions of Mr. Nguyen. It is apparent that you acquired this information about Mr. Nguyen in your capacity as a magistrate." Dkt. 1-5  In support of this claim, Green quoted the following passage from the article:

> According to Fuller, whose office issues arrest warrants and holds bail hearings, Nguyen came to work in the days following the murder nearly boasting and joking about the fact that the gun and car belonged to him and that Bouaichi had stayed at his home.
>
> "He was telling this officer about what happened and almost bragging about it. The officer said to me, 'You will never believe what he just said to me,'" Fuller said. "So I said, 'I've got to do something about it.'"

*Id.*  Green also rejected Plaintiff's assertion that "I did not comment on any ongoing case, thus [sic] did not violate the Canon." *Id.*  Green explained:

> At the time you made your comments to the Alexandria Times, Mr. Man Nguyen had been charged with the crime of contempt of court and was awaiting trial on the matter; therefore, his case was pending before a court. Your statements to the press,

the accuracy of which you do not contest, contained detailed and specific information about the defendant's conduct and other aspects of the case. Your public comments about the defendant's conduct, information that you gained in the course of your employment as a magistrate, clearly fall under the behavior prohibited by the Canon . . . Using the plain meaning of the words in Canon 3(B)(6), it is apparent that you made public comments about a pending court case and disclosed non-public information acquired in your capacity as a magistrate for a purpose outside of your official duties.

*Id.* Executive Secretary Karl Hade reviewed and approved Green's determination. *Id.*

**B.      Procedural Background**

Plaintiff filed a two-count Complaint alleging: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983 against the Defendants in their individual capacities; and (2) violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983 against the Defendants in their official capacities, specifically, that Canon 3(B)(6) as applied to Plaintiff violated her rights under the First Amendment and Due Process Clause of the Fourteenth Amendment.

## II.      <u>LEGAL STANDARD</u>

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). However, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med.*

*Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

When considering a motion to dismiss, courts are "generally limited to a review of the allegations of the complaint itself." *Goines*, 822 F.3d at 165–66. Courts may "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Id.* at 166 (citation omitted). Further, courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* However, courts need not consider "new allegations or new facts" that were available to the plaintiff when it filed the complaint, but were only introduced "in an opposition to a defendant's motion to dismiss." *Hooker v. Disbrow*, No. 1:16-cv-1588, 2017 WL 1377696, at *4 (E.D. Va. Apr. 13, 2017) (citing *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008)); *see also Marks v. Dann*, 600 F. App'x 81, 89 (4th Cir. 2015); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. . . . To hold otherwise would mean that a party could unilaterally amend a complaint at will[.]" (citations omitted)).

## III.   DISCUSSION

### A.   First Amendment Claims Against Defendants in Their Individual and Official Capacities (Counts I and II)

To determine whether a restriction imposed on a public employee's speech violates the First Amendment requires "'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick v.*

11

*Myers*, 461 U.S. 138, 142 (1983) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). This balance includes an inquiry into "(1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision." *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998).

In the instant matter, Plaintiff's Complaint alleges that Defendants, in their individual capacities, unconstitutionally retaliated against Plaintiff for exercising her right to free speech and, in their official capacities, unconstitutionally applied Cannon 3(B)(6) to Plaintiff.[4]  Defendants argue that both of these First Amendment claims must be dismissed because Plaintiff's statements to the *Alexandria Times* are best characterized as her speaking as an employee on a matter of personal interest.  Further, Defendants argue that Plaintiff's interest in her speech is outweighed by Defendants' interest in the efficient operation of the courts and public confidence in the administration of impartial justice.  Defendants also argue that they are entitled to qualified immunity in their individual capacities.  Plaintiff disputes each of these points.

　　1.　　*Whether Plaintiff spoke as a private citizen on a matter of public concern*

First, the Court considers whether Plaintiff plausibly alleges that she, in speaking to the *Alexandria Times* in connection with the October 7, 2021 article, was speaking as a private citizen on a matter of public concern.  To determine whether an employee's speech addresses a matter of

---

[4] "In order to prevail on an as-applied First Amendment challenge, a plaintiff 'must show that the regulations are unconstitutional as applied to their particular speech activity.'" *Fusaro v. Howard*, 19 F.4th 357, 368 (4th Cir. 2021) (quoting *Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014)).

public concern, courts look to the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. The question turns on "whether the speech is 'made primarily in the [employee's] role as citizen or primarily in [her] role as employee.'" *Urofsky v. Gilmore*, 216 F.3d 401, 407 (4th Cir. 2000) (quoting *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986)). If the speech does not involve a matter of public concern, but instead addresses a "personal interest," then the speech is not protected by the First Amendment. *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992). Speech involves a matter of public concern when it touches on a "matter of political, social, or other concern to the community[.]" *Connick*, 461 U.S. at 146. The public-concern inquiry centers on whether "the public or the community is likely to be truly concerned with or interested in the particular expression." *Arvinger v. Mayor of Balt.*, 862 F.2d 75, 79 (4th Cir. 1988) (internal quotation marks omitted). Courts must assess whether an employee's speech is "intended 'to evaluate the performance of the office'—which would merit constitutional protection—or merely 'to gather ammunition for another round of controversy' with superiors—which would not." *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (citing *Connick* 461 U.S. at 148).

The Court now turns to Defendants' arguments. First, Defendants argue that Plaintiff's comments were made in her official capacity because her speech was related to her duties as a magistrate. In support of this claim, Defendants argue that Plaintiff is identified in the *Alexandria Times* article by her job title, she used the pronoun "we" in her statements, and she was previously involved in Bouaichi's case when she issued an arrest warrant for him in October 2019 and a commitment order in January 2020. Dkt. 5 at 12–13. The Court will address each of these arguments in turn.

Although Plaintiff is identified in the *Alexandria Times* as "Alexandria Magistrate

Elizabeth Fuller," there is no evidence before the Court that Plaintiff herself used the title "magistrate" in making her statements to the newspaper. This case is distinct from *Bowers v. Rector & Visitors of the Univ. of Va.*, in which the court found that a plaintiff purported to speak on behalf of her state university employer where she sent a personal email that contained a signature line identifying her as a university human resources employee. 478 F. Supp. 2d 874, 878, 886 (W.D. Va. 2007). Here, there are no facts to indicate that it was Plaintiff's decision to include her job title in the article. The newspaper's decision to reference Plaintiff's job title is insufficient to show that Plaintiff was purporting to speak as a magistrate when she provided comments to the newspaper.

In addition, Plaintiff's use of the pronoun "we" in her comments to the *Alexandria Times* does not support an inference that Plaintiff was speaking on behalf of her employer. Defendants point to the following quotation from Plaintiff, in which she explained her decision to file an administrative complaint against Nguyen:

> We were just horrified seeing this guy work and still continuing to make money after we knew he was the one who had bonded him out. See, that's the thing: We knew [Nguyen] was the one who bonded him out, which in and of itself was bad enough because he didn't adhere to the bond conditions.

Dkt. 1-3 at 6. It is not clear who "we" refers to in this quotation; it is even less clear that "we" refers to, as Defendants contend, Plaintiff's employer, OES, or its magistrates. This is, at least in part, because Plaintiff uses the pronoun "we" in her explanation of what drove her decision to file a complaint against Nguyen, which Defendants do not dispute was a personal act that was not conducted in Plaintiff's official capacity as a magistrate. Moreover, it appears just as likely that the "we" that was "horrified" to see Nguyen continue to work because they "knew [Nguyen] was the one who bonded [Bouaichi] out" refers to Plaintiff and the police officer who first informed Plaintiff of Nguyen's actions. At this stage, the Court is required to draw all reasonable inferences

14

in Plaintiff's favor. *See Nemet Chevrolet, Ltd.*, 591 F.3d at 255. Accordingly, the Court does not conclude that Plaintiff's use of "we" in her statements to the *Alexandria Times* indicates that she was speaking on behalf of the court or its magistrates.

The fact that Plaintiff issued an arrest warrant for Bouaichi in October 2019 and a commitment order for Bouaichi in January 2020 also does not support Defendants' claim that Plaintiff spoke in her official capacity when she provided comments to the *Alexandria Times* about the appropriateness of Bouaichi's bail and the perceived impropriety of Nguyen's actions following Bouaichi's release on bond. This is because "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). While Plaintiff's previous magistrate duties involving Bouaichi might weigh in favor of an argument that Plaintiff's speech was inappropriate and the government's interest in the impartial administration of justice outweighs Plaintiff's right to speak publicly on this matter, Plaintiff was not involved with the bail decision discussed in her comments or any pending matters related to Bouaichi or Nguyen. Moreover, making statements to the press does not fall under Plaintiff's official duties as a magistrate. Thus, Plaintiff's limited prior involvement in Bouaichi's case does not cause this Court to conclude that Plaintiff was speaking within the scope of her duties when she provided comments to the *Alexandria Times*.

Defendants' argument that Plaintiff learned of Nguyen's conduct from a police officer while at work is of little import. *See id.* ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."). Indeed, "[t]here is considerable value . . . in encouraging, rather than inhibiting, speech by public employees. For '[g]overnment employees

are often in the best position to know what ails the agencies for which they work.'" *Id.* at 236

(quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion)).

Defendants also argue that Plaintiff's speech is unprotected because her comments to the

*Alexandria Times* were based on a matter of "personal interest." As a preliminary matter, the Court

rejects Plaintiff's contention that her comments to the *Alexandria Times* were limited to the content

of her DCJS complaint. It is clear from the newspaper article that her statements extended beyond

the factual information included in the DCJS complaint. Dkt. 1-3. Nevertheless, accepting all

facts from the Complaint as true, Plaintiff's comments to the *Alexandria Times* facially concern a

matter of public interest. Plaintiff's comments concerned the murder of Ms. Dominguez, which

had received media attention and "fueled public debate about lenient law enforcement and bail

practices in the Commonwealth of Virginia and nationwide." Compl. ¶32. Ms. Dominguez's

murder was even discussed by then-Virginia Delegate, now Virginia Attorney General, Jason

Miyares during a floor debate on bail reform in the Virginia General Assembly. *Id.* ¶33. In her

comments to the *Alexandria Times*, Plaintiff appeared to express her discontentment with the

actions of Bouaichi, Nguyen, and the Circuit Court Judge, and her belief that Ms. Dominguez's

death was "entirely preventable if anybody in the process had been doing their job effectively."

Dkt. 1-3 at 8, 9. The Court finds that such statements are "not the kind of 'individualized' internal

workplace complaints 'significant chiefly to the parties involved' that we have declined to find

implicate matters of public concern." *Billioni v. Bryant*, 759 F. App'x 144, 150 (4th Cir. 2019)

(quoting *Brooks*, 685 F.3d at 375–76); *see also Stroman*, 981 F.2d at 156 (explaining that

"[p]ersonal grievances, complaints about conditions of employment, or expressions about other

matters of personal interest do not constitute speech about matters of public concern that are

protected by the First Amendment, but are matters more immediately concerned with the self-

interest of the speaker as employee"). Accordingly, the Court finds that Plaintiff's comments plausibly raise concerns in the public—rather than her private—interest.

2. *Whether Defendants' governmental interests outweigh Plaintiff's right to speak as a citizen on matters of public concern*

Next, Defendants argue that Plaintiff's right to publicly comment on the appropriateness of Bouaichi's bail and the perceived impropriety of Nguyen's actions following Bouaichi's release on bond is outweighed by Defendants' interests, including ensuring effective and efficient services to the public and the public's confidence in the judicial system. Dkt. 5 at 16–20. Plaintiff contends that Defendants are required to make "a stronger showing" of the government's interests because Plaintiff's speech on the release of an alleged violent offender on bail was of significant national and local public interest. Dkt. 14 at 16–19. Plaintiff claims that Defendants' showing of governmental interests falls short because Plaintiff did not disclose sensitive or confidential information, her comments did not "impair discipline" by her superiors, and her speech was exempted from Canon 3(B)(6) because it involved proceedings in which "the magistrate is a litigant in personal capacity." *Id.*

"[T]he government bears the 'burden of justifying the discharge on legitimate grounds.'" *Smith v. Gilchrist*, 749 F.3d 302, 309 (4th Cir. 2014) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). The balancing test requires the Court "to consider the context in which the speech was made, including the employee's role and the extent to which the speech impairs the efficiency of the workplace." *Id.* The Fourth Circuit has identified the following factors as relevant to this inquiry:

> [W]hether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the [agency]; (6) undermined the mission of the [agency]; (7) was communicated to the public or to coworkers in private;

17

(8) conflicted with the responsibilities of the employee within the [agency]; and (9) abused the authority and public accountability that the employee's role entailed.

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006). In balancing the competing interests, "we do not require the public employer to prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was 'reasonably to be apprehended.'" *Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992) (quoting *Jurgensen v. Fairfax Cnty.*, 745 F.2d 868, 879 (4th Cir. 1984)). "[A] public employee, who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee." *McVey*, 157 F.3d at 278. Whether the employee's interest in speaking outweighs the government's interest is a question of law for the court. *Smith*, 749 F.3d at 309.

While there are serious governmental interests in, for example, ensuring the public's confidence in a fair and impartial judicial system, the Court is unable to say, at this early stage of litigation, that Plaintiff will be unable to show that her interest in First Amendment expression outweighs Defendants' interest in the operation of the judicial system. Once a factual record is developed through discovery, the evidence could support the inference that Plaintiff's workplace was impaired (or was likely to be impaired) as a result of her comments and that she was properly removed from her position. Such a question, however, is not to be assessed under Rule 12(b)(6) but in Rule 56 summary judgment proceedings. *Ridpath*, 447 F.3d at 318 ("At the Rule 12(b)(6) stage, [plaintiff's] allegations warrant the inference that his free speech interests outweigh the detrimental effect, if any, his comments may have had on the efficiency of his workplace"). Because the Complaint does not on its face resolve whether Defendants' governmental interests outweigh Plaintiff's right to express herself on the subject and in the manner she did, the Court

18

finds that Plaintiff states a plausible claim to relief sufficient to survive a motion to dismiss.

3.   *Qualified Immunity*

Next, the Court turns to the question of whether Defendants are entitled to qualified immunity on Plaintiff's retaliation claim against them in their individual capacities.   Qualified immunity "shield[s] [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013).   To determine whether Plaintiff's Complaint should survive a qualified immunity-based motion to dismiss, the Court "conduct[s] a two-step inquiry, in either order: (1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]"   *Est. of Jones ex rel. Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020).   "When determining whether a reasonable [official] would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues."   *McVey*, 157 F.3d at 277.   Accordingly, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."   *Maciariello*, 973 F.2d at 298.   In the instant matter, Defendants argue that they are entitled to qualified immunity because a constitutional violation did not occur and because no existing precedent informed Defendants that enforcing Canon 3(B)(6) against Plaintiff violated her First Amendment rights.   Plaintiff, in turn, argues that Defendants are not entitled to qualified immunity because it is clearly established in the Fourth Circuit that it is unlawful to fire a public employee for publicly commenting on government misconduct.

As stated above, the record has not yet been developed on whether Plaintiff's First Amendment interests were outweighed by Defendants' interests in, for example, effective and

efficient services to the public and the public's confidence in the judicial system. For this reason, the Court will not decide at this stage of litigation whether Plaintiff's First Amendment rights were violated. However, assuming *arguendo* that a constitutional violation did occur, the Court finds that the First Amendment principles were not clearly established such that a reasonable employer would have known that it was violating Plaintiff's rights when it terminated her employment.

"There is no doubt that the broad legal principle governing this case—that public employees may not be fired on a basis that infringes on their First Amendment rights—was clearly established at the time of [Plaintiff's] termination." *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007). However, "[i]n analyzing the applicability of a qualified immunity defense, we must first identify the specific right that [Plaintiff] asserts was infringed by the challenged conduct at a high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250–51 (4th Cir. 1999). Stated at the appropriate level of particularity, the right allegedly violated by Defendants is the right of a judicial officer to comment publicly on a pending, impending, or concluded case in the judicial system by which she is employed. Such a right is not clearly established.

Plaintiff cites to several cases in support of a clearly established right for public employees to speak out on government misconduct. *See, e.g.*, *Durham v. Jones*, 737 F.3d 291, 303–04 (4th Cir. 2013) (upholding a jury verdict for a plaintiff police officer terminated in retaliation for speaking out about law enforcement misconduct that he experienced firsthand); *Andrew v. Clark*, 561 F.3d 261, 266–68 (4th Cir. 2009) (remanding a case in which a plaintiff police officer was terminated for releasing an internal memorandum on the use of deadly force to a news reporter). However, such a right is distinct from the specific right alleged here. Unlike the police officers in these cases, Plaintiff was employed as a judicial officer and charged with conducting "impartial hearings related to searches, arrests, bails, temporary mental health detentions, and protective

20

orders." Compl. ¶17. Plaintiff was also bound by the Canons of Conduct, which established standards for the ethical conduct of magistrates, and included the requirement to "abstain from public comment about a pending, impending or concluded proceeding in any court or magistrate's office." Canon 3(B)(6). Accordingly, it is not "apparent" in "light of pre-existing law" that it would be unlawful to terminate Plaintiff's employment due to her public comments on a pending, impending, or concluded case in the judicial system by which she is employed. *Anderson*, 483 U.S. at 640.

Thus, even if the Court accepts that Plaintiff's termination for her speech violated her First Amendment rights, it cannot conclude that Defendants actions transgressed bright lines, particularly where reasonable minds may differ as to whether the government's interest in the impartial administration of the court outweighed Plaintiff's interests in expressing herself on the subject and in the manner she did. Indeed, the Fourth Circuit has repeatedly found that "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995) (quoting *Connick*, 461 U.S. at 150); *see also Bartlett v. Fisher*, 972 F.2d 911, 916–17 (8th Cir. 1992) (noting that qualified immunity should "rarely" be denied under *Pickering*, which requires a balancing to resolve a public employee's First Amendment claim). Thus, Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

**B.     Fourteenth Amendment Due Process Claim (Count II)**

Next, Defendants argue that Plaintiff fails to state a claim under the Due Process Clause of the Fourteenth Amendment. In support of this position, Defendants argue that Plaintiff was an at-

will employee and had no protectible property interest in her continued employment as a magistrate. Dkt. 15 at 16–18.  In the event that the Court determines that Plaintiff did have a protectible property interest in her continued employment as a magistrate, Defendants argue that Plaintiff received notice of the allegations against her and had an opportunity to respond to them. *Id*.  However, the Court need not reach the question of whether Plaintiff had an adequate opportunity to contest the charges against her because it is clear that Plaintiff does not have an entitlement to her continued employment as a magistrate.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  In the public employment context, "it is not enough for a plaintiff to demonstrate that he has lost his job." *Herman v. Lackey*, 309 F. App'x 778, 783 (4th Cir. 2009).  "Instead, the relevant inquiry is whether the plaintiff possessed a protectable property interest in his or her continued employment." *Id*.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents*, 408 U.S. at 577.  "Thus, only where the employee has a legitimate entitlement to continued employment do the requirements of due process attach." *Royster v. Bd. of Trustees*, 774 F.2d 618, 621 (4th Cir. 1985).  Accordingly, "[a] local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest." *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990).

Courts look to state law to determine whether a plaintiff had a protectable property interest in their continued employment. *See Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000).  Here,

state law makes clear that magistrates are at-will employees serving at the discretion of the Executive Secretary of the Supreme Court of Virginia. Virginia Code Ann. § 19.2-38 states that "[p]ersons appointed as magistrates . . . shall serve at the pleasure of the Executive Secretary."[5] In response, Plaintiff appears to argue that magistrates nevertheless have a protectible property interest in their continued employment because a grievance procedure is available to them. Dkt. 14 at 19–20. However, the fact that a grievance procedure was available to Plaintiff is insufficient to rebut the presumption of an at-will employment relationship. *See, e.g.*, *Progress Printing Co. v. Nichols*, 421 S.E.2d 428, 430–31 (Va. 1992) (rejecting the employee's contention that a termination for cause provision in the employee handbook is sufficient to rebut the presumption of an at-will employment relationship where the employee signed an acknowledgement form stating that he is an at-will employee); *Grant v. Southside Reg'l Jail*, 3:19-cv-70, 2019 WL 4858317, at *4 (E.D. Va. Oct. 2, 2019) (finding that the fact that a grievance procedure was available to the plaintiff does not rebut the presumption of an at-will employment relationship). Accordingly, Plaintiff lacked a protectible property interest in continued employment and thus the requirements of procedural due process do not apply.

## IV.   CONCLUSION

For the reasons previously stated, Defendants' Motion to Dismiss (Dkt. 4) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** with respect to Count I and the Fourteenth Amendment claim under Count II. The Motion is **DENIED** with respect to the First Amendment claim under Count II.

It is **SO ORDERED.**

---

[5] As discussed above, *supra* note 2, Plaintiff's March 8, 2019 appointment letter specifically states that she is an at-will employee.

February 28, 2023
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge